# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **WILLIAM P. AGEE,** ) | |
| Plaintiff, ) | Civil Action No. 2:08cv00054 |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | By: Pamela Meade Sargent |
| Defendant. ) | United States Magistrate Judge |

*I. Background and Standard of Review*

The plaintiff, William P. Agee, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It

-1-

consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Agee protectively filed his current applications for DIB and SSI[1] on April 7, 2006, alleging disability as of March 15, 2006, due to a brain injury, back problems, light sensitivity, mood swings, pain in both hands, high blood pressure and short term memory loss. (Record, ("R."), at 55-56, 74-75, 78, 89.) The claims were denied initially and upon reconsideration. (R. at 33-35, 36, 37-41.) Agee then requested a hearing before an administrative law judge, ("ALJ"). (R. at 42.) The ALJ held a hearing on February 12, 2008, at which Agee testified and was represented by counsel. (R. at 466-95.)

By decision dated February 29, 2008, the ALJ denied Agee's claims. (R. at 16-28.) The ALJ found that Agee met the disability insured status requirements of the Act for DIB purposes through September 30, 2006. (R. at 18.) The ALJ also found that Agee had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 18.) The ALJ determined that the medical evidence established that Agee suffered from severe impairments, namely status post closed head injury and headaches; however, he found that Agee did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) In addition, the ALJ found that Agee had the residual

---

[1]Agee's applications are not contained in the record.

-2-

functional capacity to perform a limited range of light work.[2] (R. at 19-26.) Specifically, the ALJ found that Agee was able to frequently lift and/or carry items weighing up to 10 pounds, occasionally lift and/or carry items weighing up to 20 pounds and that he could sit, stand or walk for about six hours in an eight-hour workday. (R. at 19.) The ALJ further found that Agee could occasionally climb, crouch and crawl, frequently balance, stoop and kneel and should avoid concentrated exposure to extreme heat, extreme cold and hazards such as moving machinery or unprotected heights. (R. at 19.) Thus, the ALJ found that Agee was unable to perform any of his past relevant work. (R. at 26.) Based upon Agee's age, education, work experience and residual functional capacity, as well as the testimony of a vocational expert, the ALJ determined that there were jobs existing in significant numbers in the national economy that he could perform, including those of a hand packer, an inspector and a silver wrapper. (R. at 26-27.) Therefore, the ALJ concluded that Agee was not under a disability as defined in the Act and was not entitled to DIB or SSI benefits. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

After the ALJ issued his decision, Agee pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 6-9.) Agee then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). This case is before the court on Agee's motion for summary judgment, which was filed February 24, 2009, and on the Commissioner's motion for summary judgment, which was filed on March 30, 2009.

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

Case 2:08-cv-00054-JPJ-PMS   Document 15   Filed 05/14/09   Page 3 of 14   Pageid#: 58

*II. Facts*

Agee was born in 1964, (R. at 74), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). According to the record, Agee has a tenth-grade education[3] and past work as a drywall/construction worker. (R. at 67, 72.)

The medical evidence shows that Agee fell from a horse on March 15, 2006, and suffered a serious closed head injury with resulting brain damage. (R. at 139-67.) Agee was initially treated at Lee Regional Medical Center and transported by helicopter ambulance to Wellmont Bristol Regional Medical Center, ("BRMC"). (R. at 138-67.) A CT scan performed on March 15, 2006, showed a large hematoma in the right side of the superoparietal region of the skull, a fracture in the right temporal and right parietal bone and a large hemorrhage in the left parietal area with contusion to the brain. (R. at 165.) A CT scan of the cervical spine showed some degenerative changes but no fracture. (R. at 166.)

Agee remained at BRMC from March 15, 2006, to April 11, 2006. (R. at 198-283.) Upon Agee's transfer to BRMC, Dr. Matthew W. Wood Jr. performed a left temporal parietal craniotomy to remove a hematoma on Agee's brain and a partial temporal lobectomy. (R. at 199.) While in the hospital, Agee also developed respiratory failure and a serious infection in his central nervous system. (R. at 200-01, 211-14.) Agee was discharged from BRMC on April 11, 2006. (R. at 199-202.)

---

[3]Although Agee indicated that he completed the eleventh grade on his Disability Report, (R. at 72), he testified at his hearing that he was not sure that he completed the tenth grade. (R. at 472.)

-4-

According to Dr. Wood, Agee made a "remarkable recovery considering the severity of his injuries and the critical state of his infection." (R. at 201.)

Agee was treated at Healthsouth Rehabilitation Hospital from April 11, 2006, to April 18, 2006. (R. at 171-81.) Agee began treating at Stone Mountain Health Services in St. Charles, Virginia, on April 21, 2006. (R. at 188-90.) On this date Agee reported that he was doing really well since his head injury, and he was requesting removal of a percutaneous endoscopic gastronomy, ("PEG"), tube inserted through his abdomen after his surgery. (R. at 188.) Agee returned to Stone Mountain Health Services on May 19, 2006, requesting to be allowed to return to work. (R. at 289.) Agee complained of some generalized weakness and vertigo. (R. at 289.)

On June 16, 2006, Agee was seen by Dr. Marissa Vito Cruz, M.D., with Stone Mountain Health Services, ("Stone Mountain"). (R. at 292.) Agee reported recently suffering from a seizure after he had purposefully decreased his seizure medication. (R. at 292.) Agee also reported that he had attempted to return to work but "got very exhausted." (R. at 292.) On July 20, 2006, Agee told Dr. Cruz he was "doing remarkably well." (R. at 293.) He did report a recent episode of aphagia, where he could not think of the words for certain objects, but he said that the episode resolved. (R. at 293.) He also complained of daily headaches and dizziness. (R. at 293.)

On September 13, 2006, Agee presented complaining of dizzy spells. (R. at 418-19, 421.) Agee gave a history of mild generalized anxiety and complained of some moodiness. (R. at 418.) The nurse practitioner who saw Agee recommended that he increase his BuSpar dosage and placed him on blood pressure medication. (R. at

418.) On September 27, 2006, Agee complained of increasing low back pain because he had become less active. (R. at 416.) On November 9, 2006, Agee continued to complain of low back pain. (R. at 414.) He was prescribed ibuprofen and Flexeril. (R. at 414.)

On September 22, 2006, Dr. Michael Hartman, M.D., completed a Physical Residual Functional Capacity Assessment on Agee. (R. at 335-48.) Based on his review of the medical evidence, Dr. Hartman stated that Agee could occasionally lift and carry item weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 336.) Dr. Hartman stated that Agee could stand and walk and sit up to six hours in an eight-hour workday. (R. at 336.) He stated that Agee could occasionally climb, crouch and crawl and frequently balance, stoop and kneel. (R. at 337.) Dr. Hartman also stated that Agee should avoid concentrated exposure to extreme heat or cold and hazards such as heights or machinery. (R. at 338.)

Dr. Douglas A. Wright, M.D., of Associated Neurologists of Kingsport, saw Agee for a consultative examination on November 27, 2006. (R. at 354-57.) Agee complained of suffering a possible seizure recently after discontinuing his seizure medication. (R. at 354.) Dr. Wright restricted Agee from driving and recommended that he continue taking anti-seizure medication. (R. at 357.) Dr. Wright saw Agee again on January 19, 2007. (R. at 351-53.) On that date, Agee reported that he was doing well, with no periods of loss of consciousness, confusion or jerking since his last visit in November 2006. (R. at 351.)

On February 9, 2007, Dr. Richard Surrusco, M.D., completed a Physical

-6-

Case 2:08-cv-00054-JPJ-PMS   Document 15   Filed 05/14/09   Page 6 of 14   Pageid#: 61

Residual Functional Capacity Assessment on Agee. (R. at 360-66.) Based on his review of the medical evidence, Dr. Surrusco stated that Agee could occasionally lift and carry items weighing up to 20 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 361.) Dr. Surrusco stated that Agee could stand and walk and sit up to six hours in an eight-hour workday. (R. at 361.) He stated that Agee could occasionally climb, crouch and crawl and frequently balance, stoop and kneel. (R. at 362.) Dr. Surrusco also stated that Agee should avoid concentrated exposure to extreme heat or cold and hazards such as heights or machinery. (R. at 363.)

On October 3, 2007, Agee returned to Stone Mountain Health Services and was seen by Dr. Jill K. Couch, M.D. (R. at 405-06.) Dr. Couch noted that Agee's recovery from his head injury had exceeded expectations. (R. at 406.) She noted that Agee had suffered from seizures when he had discontinued his anti-seizure medication, but that these had resolved when he began taking the medication again. (R. at 406.) She noted that Agee's anxiety and depression were controlled and that his sleeping and interest level had improved. (R. at 406.) Dr. Couch noted that Agee's hypertension was controlled with medication. (R. at 406.) She noted that Agee continued to complain of low back pain. (R. at 406.) Straight leg raising tests were negative. (R. at 406.) Muscle strength and deep tendon reflexes were normal and symmetrical, and Dr. Couch noted mild tenderness of the paraspinal muscles across Agee's lower back. (R. at 406.) Agee was given a prescription for Lortab for his continuing complaints of back pain. (R. at 405.)

Agee saw Dr. Wright again on November 15, 2007. (R. at 368-71.) Agee told Dr. Wright that he suffered from no numbness, weakness, slurred speech, loss of

vision or convulsions. (R. at 369.) Agee's neurological examination continued to be normal. (R. at 369-71.) Dr. Wright continued Agee on anti-seizure medication and continued to restrict his driving. (R. at 368.)

On March 19, 2007, Dr. Uzma Entesham, M.D., a psychiatrist, saw Agee. (R. at 380-81.) Agee complained of feeling sad. (R. at 380.) Agee also said that he got very angry and he complained of frequently misplacing items. (R. at 380.) Dr. Entesham diagnosed Agee with a major depressive disorder and prescribed Effexor. (R. at 381.) Agee saw Dr. Entesham again on March 29, 2007. (R. at 379.) Agee continued to complain of depression. (R. at 379.) On May 8, 2007, Agee told Dr. Entesham that the medication was helping. (R. at 378.) Agee reported that he was less sad, his memory was improving and his anger was less intense. (R. at 378.) On May 24, 2007, Agee told Dr. Entesham that his depression was improving. (R. at 377.)

On February 1, 2008, Dr. Entesham completed a Mental Residual Functional Capacity Questionnaire regarding Agee. (R. at 372-76.) Dr. Entesham stated that Agee suffered from a major depressive disorder, which, despite his office notes to the contrary, he stated had not responded well to medication. (R. at 372.) Dr. Entesham stated that Agee's prognosis was "poor." (R. at 372.) Dr. Entesham stated that Agee had a then-current Global Assessment of Functioning,[4] ("GAF"), score of 60.[5] (R.

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[5]A GAF of 51-60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-8-

372.) Dr. Entesham stated that Agee was unable to meet competitive standards or had no useful ability in every mental ability or aptitude needed to do unskilled work, with the exception of being award of normal hazards and taking appropriate precautions, which he deemed seriously limited, but not precluded. (R. at 374.) In support of his assessment, Dr. Entesham wrote that Agee had a problem with mood swings. (R. at 374.) He also stated that Agee got angry and agitated easily, cried and felt sad. (R. at 374). He further stated that Agee's memory and concentration were decreased. (R. at 374.) Dr. Entesham opined that Agee was unable to meet competitive standards for all mental abilities and aptitudes needed to do semi-skilled and skilled work. (R. at 375.) Dr. Entesham also stated that Agee's impairment had not lasted or was not expected to last at least 12 months. (R. at 376.)

Agee returned to Dr. Couch on February 7, 2008, complaining that Lortab was not controlling his back pain. (R. at 398-99.) On February 29, 2008, Agee reported increased depression since the recent death of this father. (R. at 461.) On June 2, 2008, Dr. Couch completed a Medical Assessment Of Ability To Do Work-Related Activities (Physical), on which she stated that Agee could lift and carry items weighing up to 10 pounds two to three times in a day. (R. at 462-63.) Dr. Couch also stated that Agee could stand and walk for a total of only 10 minutes and sit for a total of only 10 minutes in an eight-hour workday. (R. at 462.) Dr. Couch stated that Agee could never climb, stoop, kneel, balance, crouch or crawl. (R. at 463.) She also stated that Agee's ability to reach, handle, feel, push/pull, see, hear and speak were affected. (R. at 463.) Dr. Couch stated that Agee could not work around heights, moving machinery, temperature extremes, chemicals, dust, noise, humidity or vibration. (R. at 463.)

-9-

Dr. Couch also completed a Medical Assessment Of Ability To Do Work-Related Activities (Mental) on June 20, 2008. (R. at 464-65.) On this form, Dr. Couch stated that Agee had no useful ability to make any occupational, performance or personal-social adjustments other than a seriously limited but not precluded, ability to maintain personal appearance. (R. at 464-65.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in

the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated February 29, 2008, the ALJ denied Agee's claims. (R. at 16-28.) The ALJ found that Agee met the disability insured status requirements of the Act for DIB purposes through September 30, 2006. (R. at 18.) The ALJ also found that Agee had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 18.) The ALJ determined that the medical evidence established that Agee suffered from severe impairments, namely status post closed head injury and headaches; however, he found that Agee did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) In addition, the ALJ found that Agee had the residual functional capacity to perform a limited range of light work. (R. at 19-26.) Specifically, the ALJ found that Agee was able to frequently lift and/or carry items weighing up to 10 pounds, occasionally lift and/or carry items weighing up to 20 pounds and that he could sit, stand or walk for about six hours in an eight-hour workday. (R. at 19.) The ALJ further found that Agee could occasionally climb, crouch and crawl, frequently balance, stoop and kneel and should avoid concentrated exposure to extreme heat, extreme cold and hazards such as moving machinery or unprotected heights. (R. at 19.) Thus, the ALJ found that Agee was unable to perform any of his past relevant work. (R. at 26.) Based upon Agee's age, education, work experience and residual functional capacity, as well as the testimony of a vocational expert, the ALJ determined that there were jobs existing in significant numbers in the

national economy that he could perform, including those of a hand packer, an inspector and a silver wrapper. (R. at 26-27.) Therefore, the ALJ concluded that Agee was not under a disability as defined in the Act and was not entitled to DIB or SSI benefits. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Agee argues that the ALJ's decision that he was not disabled is not supported by substantial evidence. In particular, Agee argues that the ALJ's finding as to his residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-13.) Agee argues that the ALJ erred by failing to find that he suffered from a severe mental impairment and in failing to place any restrictions on his mental work-related activities.

Agee is correct that numerous health care providers have diagnosed him with, and treated him for, anxiety and depression. In particular, his general practitioners at Stone Mountain have routinely prescribed anti-depressant medication for him. (R. at 406, 418.) Beginning March 19, 2007, Agee treated with a psychiatrist, Dr. Entesham, who diagnosed him as suffering from major depressive disorder. (R. at 380-81.) While office notes reflect that Agee's anxiety and depression had responded well to medication, both Dr. Entesham and Dr. Couch placed extensive restrictions on his work-related activities. In fact, these restrictions are so severe it is difficult to accept them as credible. Nevertheless, the uncontradicted evidence is that Agee suffers from mental impairments, although the extent of their effect on his work-related abilities might be questionable. Despite this uncontradicted evidence, the ALJ failed to request a consultative psychological evaluation or even the completion of a Psychiatric

-12-

Review Technique form by a state agency psychologist. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained professional." *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (citing *McLain*, 715 F.2d at 869; *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). That being the case, the substantial evidence does not support the ALJ's finding that Agee did not suffer from a severe mental impairment, nor does it support his finding as to Agee's residual functional capacity.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the Commissioner's finding that Agee did not suffer from a severe mental impairment;

2, Substantial evidence does not exist in the record to support the Commissioner's finding as to Agee's residual functional capacity; and

3. Substantial evidence does not exist in the record to support the Commissioner's finding that Agee was not disabled.

## RECOMMENDED DISPOSITION

The undersigned recommends that this court deny Agee's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying benefits and remand this case for further

-13-

consideration.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable James P. Jones, Chief United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

**DATED:** This 14th day of May 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE